DECISION ON THE MOTION FOR A NEW TRIAL
This matter Is before the court on remand from the Supreme Court, directing the trial court to articulate with greater precision what It concluded from the evidence in denying the motion for a new trial and to use its independent judgment in evaluating the reliability of the witnesses, to determine to what extent reliability affected the witnesses' credibility, to determine what weight should be given to their testimony, and to make a finding on whether the verdict was against the weight of the evidence.
After remand, the parties reargued the motion for a new trial and submitted memoranda.. Thereafter, this Court, whose memory of the appearance and demeanor of the witnesses remains as fresh today as at the time of trial, reexamined in depth the testimony of all witnesses both at the trial and during the suppression hearing. The defendants are brothers, Soukky and Sythongsay (Khek) Luanglath.
A recapitulation of the facts of the case is in order:
Three armed men invaded a home on Baker Street in Providence sometime after 11 p.m. on March 16, 1990, and terrorized and robbed the six members of a Laotian family, whose surname was Souvannaleuth, who were living there. They Included Khamdeng and Kongkeo, husband and wife, their adult children Malaythong, Southhavong and Kongseng, sisters, and their younger brother, Somsamay.
Currency, gold and jewelry with a value of between $39,000 and $78,000 were taken from the terrorized family. One of the officers who responded to the Souvannaleuth home, after the robbery was reported, was told that three Laotian men with guns had invaded the house. The Souvannaleuths were Laotian.
The evidence conclusively leading to the identification of the defendants Sythongsay (Khek) Luanglath and his brother Soukky Luanglath consisted of the testimony of Mrs. Kongkeo Souvanaleuth, her husband Khamdeng and three of the children present at the time of the home invasion.
Somsamay Souvannalueth, who was a student at the time of trial, testified that the men entered the house by kicking the door open, that he saw guns, that they pointed a gun at him and hit him. He testified that he put his head down, and that he didn't look at anyone. One of the men opened the youngsters shirt and ripped off a neck chain. He heard the men order his mother, who was in the living room with him, to put her head down.
Khamdeng Souvannaleuth testified that he had come home earlier, and was in the bathroom when he heard some noise in the living room and heard mention of money. He went to the living room and saw a man pointing a gun at his wife. He identified that man as Soukky by pointing him out at trial. Mr. Souvannaleutiu told the jury that he had known the defendant Soukky before the robbery, that he had seen him "clearly" at the time of the robbery, and that on the night of the home invasion Soukky was the person whose full face he saw at his house and that he recognized him at once.
Malaythong testified that she was In her bedroom and that a man she recognized from the Laos party, called Khek, and another man came Into the bedroom and that Khek was the one who asked her about the money. Both men had guns. She was told to lie down on the floor in the Laos language. Jewelry was pulled from her neck and a bracelet from her arm. She was unable to Identify the person who had taken the jewelry because she was lying down on the floor at the time. She said she recognized Khek from the Laos party, that she had known him, although not for a long time, and that she had seen him in the past. She also emphatically said that when Khek entered the room, she recognized him, knew him and was sure of who It was at the time. She convincingly added that she did not tell the police at the outset that she recognized Khek because of her very real fear that the men would come back and "would kill us".
Kongseng Souvannaleuth, another daughter, testified to the events at their Baker Street home. She said that she too was told to remove her jewelry, that one of the men pointed a gun at her, and that one pulled off her jewelry. She said both men were almost the same size, one a little bit taller than the other. She testified that the man with the gun had a round face, and that he was Laotian. She said she was a friend of the defendants' sister, Paivanh, that she had in the past seen the defendants' family band, that she knew that two of the invaders were Soukky and Khek, that Khek was the one who pointed the gun, and Soukky the one who removed her jewelry. She also identified the poster of the band called the Phaivanh Group and later took that poster to the police.
Kongkeo Souvannaleuth, the mother, testified that she recognized two of the Invaders, that she knew them and their names, Khek and Soukky, before the night of the robbery. She and others said that Khek had a mustache that night. She told the jury that Rhek was the one who tied her up and asked for the money, and that Soukky pointed a gun at her. Mrs. Souvannaleuth testified not only that she had known both defendants prior to the day of the robbery, but that she had known their mother, their sisters and their sister Paivanh in particular. She testified that she recognized the two brothers at once during the robbery. She also related to the jury that the ring she was wearing, which one of the robbers said he would take even if he had to cut off her finger, had in fact been Palvanh Luanglath's ring, and that she, Mrs. Souvannaleuth, had bought it from Palvanh. She also told how a few days before the robbery, Paivanh Luanglath called her to borrow money, but that she refused to lend her any.
Kongseng Souvannaleuth testified that she too was friendly with the defendants' sister Palvanh, and had before the robbery seen both defendants and had seen them playing in the Luanglath family band, the Paivanh Group, the subject of the poster.
On the night of the robbery Kongseng told the investigating officers, through an interpreter, that when she saw the defendants' faces during the robbery, she knew them right away, and that they were friends of hers. In fact, two or three days after the robbery, she took the poster to the police station with the pictures of the defendants Soukky and Sythongsay (Khek) Luanglath.
It is worth noting that at a bail hearing, a third person charged with this robbery, was released because Kongseng said that she was unable to identify him as one of the robbers.
Malaythong Souvannaleuth testified that she was able to see the face of only one of the three robbers. She said she based her recognition of Sythongsay (Khek) on her history of having seen him at so-called "Laos" parties. She knew him in fact by the name Khek. It Is important to note here that although Malaythong was always aware that her father had identified Soukky as one of the robbers, she only Identified Synthongsay (Khek) and never identified Soukky.
There was free admission at the trial that the family discussed the robbery among themselves after they had left the police station and the hospital. Importantly, against this background of full discussion among the victims of the home invasion, the net testimony at all stages of this case was always consistent: Kongseng and her mother Identified both brothers, these defendants; Malaythong and her father each identified only that person whose face each had independently seen during the robbery, and the son, Somsamay Souvannaleuth did not identify anyone because, he said, he did not "see the face".
This was impressive support for the victims' testimony relating to the identification of the defendants. Although they lived in the same household, heard each other's versions of what had occurred that night, traveled together to view their assailants, each family member had a slightly different and very believable view of what had occurred. Nothing in their demeanor on the stand, nor in the content of their testimony, was there the faintest suggestion that their testimony had been orchestrated.
This Court retains a vivid impression of the strength, credibility and certainty each witness brought to bear on his or her respective identifications. There was a candor, an earnestness and an historical consistency in their identifications of these defendants as two of the three men who Invaded their home and robbed them.
Moreover, the circumstances surrounding their observations of the intruders admitted of no chance for error and supported the validity of the identifications: the lighting was adequate, there was ample time for the witnesses/victims to make their observations, they had known their fellow countrymen in the past, and the circumstances surrounding the Intrusion lent themselves to accurate, and unshakeable, observations.
The identifications both pretrial and during the trial, were all made independently of one another and were not the products of a family "consensus", and as this jury clearly saw, not all victims identified both defendants. The compelling and unmistakable conclusion is that the identifications were completely reliable, independent of each other and fully credible.. And, in this Court's considered opinion, after further careful review, and this Court so finds, nothing in the testimony during the suppression hearing undermines the Court's holding that this jury was legally entitled to reach its decision on testimony that was sturdy and worthy of belief, that the verdicts were not against the fair preponderance of the evidence, and the verdicts did substantial justice.
The hesitancy expressed by this Court in its previous decision on the motion for a new trial with respect to pretrial observations has been resolved in favor of reliability, credibility and probative value of the identifications for reasons which will be expressed hereinafter. This Court has carefully reviewed its notes and factually resolved the issue of reliability and credibility. This Court indeed expressly finds, in its considered judgment and review of the record and testimony of this case, that the witnesses were reliable, that full weight is to be accorded to their testimony, that their credibility was never undermined and that the verdicts are fully In accord with all of the evidence and testimony presented.
As this Court stated in its original decision on the motion for a new trial, the witnesses were credible, and believable. In its decision on the original motion for a new trial, this Court said:
 "The jury verdicts In this case were a reflection of the victims' testimony, clearly identifying both of these defendants as two of the three men who invaded their Baker Street home and robbed them."
In a review of the transcript, evidence and the Court's trial notes, this Court finds that there was ample, strong, reliable, credible and legitimate evidence to support the jury's verdicts of guilty. Every witness remained steadfast, unhesitant and certain of his or her individualized identifications of the defendants. Assuredly, and this Court so finds, this jury had ample believable, highly credible and lawful evidence on which to base Its verdicts. This jury clearly saw that only where a victim saw and remembered a fact did that witness identify anyone. It was not lost on this jury, and this again demonstrated reliability, that Malaythong only identified Khek, and Khamdeng only identified Soukky, despite knowing that other members of the family had identified both Soukky and Khek. Equally Impressive was the fact that Kongseng and Kongkeo, in other circumstances fully presented to this jury, did not make an Identification when they were unsure of an identification. This was equally impressive and indicative of reliability and believability.
On a comprehensive review of the record, there is nothing to suggest that the identifications, at trial or before trial, were tainted, fictional or unreliable. There was a characteristic in one or two of the witnesses at pretrial hearings, which the Court precipitously saw as raising a question as to reliability. After more careful review of the testimony and the Court's own trial notes, it is clear that the witnesses at the pretrial proceedings were shy, humble and timid, perhaps culturally and socially unprepared for the proceedings. This Court noted in its previous decision on the motion for a new trial, the worthy quality of the witnesses' testimony and their demeanor in the presence of the jury rendering their testimony very worthy of belief.
As this Court stated in its previous decision on the motion for a new trial, the witnesses appeared to be very truthful persons who wanted to, and did, tell the truth. They did not present as liars, as persons sophisticated in concocting a story, pinning the blame on two innocent people. This Court finds that these verdicts were not against the weight of the evidence, indeed the reliability, force and believability of the testimony fully support the jury's findings.
 CONCLUSION
The Inescapable conclusion must be and this Court so finds, that whether or not this Court, at the original motion for a new trial may have mischaracterized the witnesses who testified at the suppression hearing, the fundamental fact remains that the jury verdicts in this trial were correctly and overwhelmingly supported by reliable, probative, competent and credible evidence which convinced this jury that, beyond a reasonable doubt, these defendants were two of the three men who subjected the Souvannaleuth family to an extraordinary night of terror.
The motion for a new trial is denied.